Citation Nr: 1528168 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 10-16 363 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New Orleans, Louisiana


THE ISSUES

1. Entitlement to a disability rating greater than 20 percent for herniated nucleus pulpous with surgery L5-S1 (back disability). 

2. Entitlement to a disability rating greater than 10 percent for fractures of the second and third metatarsals of the right foot. 

3. Entitlement to a disability rating greater than 10 percent for fracture of the right great toe with hallux valgus. 


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

A. Barbier, Associate Counsel


INTRODUCTION

The Veteran served on active duty from August 1956 to August 1960. 

This appeal comes before the Board of Veterans' Appeals (Board) from a July 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Milwaukee, Wisconsin, prepared for the RO in New Orleans, Louisiana. 

In April 2012, the Board remanded these claims to the RO for additional development. 

The Board notes that the September 2014 VA examiner considered all symptoms of the Veteran's right foot and found that the symptomology of his right great toe was well as his second and third metatarsals contributed to his overall foot symptoms and could not be separated and determined without resorting to speculation. Additionally, the Board notes that the Veteran's claim for an increased rating for his great right toe was included in the February 2010 statement of the case and the September 2014 supplemental statement of the case. The Veteran's representative also addressed this issue in a June 2015 Appellant Brief. The Board finds that the AOJ has indicated to the Veteran that this issue is on appeal. Thus, this issue is characterized as stated on the title page of this decision. See Percy v. Shinseki, 23 Vet. App. 37, 46 (2009). 

This appeal was processed using the Virtual VA (VVA) and Virtual Benefits Management System (VBMS) paperless claims processing systems. Accordingly, any future consideration of this appellant's case should take into consideration the existence of these electronic records.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. For the entire period on appeal, the Veteran's back disability resulted in reduced range of motion that included forward flexion limited to no less than 60 degrees and a combined range of motion of no less than 200 degrees. 

2. For the entire period on appeal, the Veteran's right foot second and third metatarsal fracture, manifested by pain and stiffness, results in no more than moderate impairment of the right foot. 

3. For the entire period on appeal, the Veteran's right foot great toe fracture, manifested by hallux valgus, pain and stiffness, with difficulty walking, results in no more than moderate impairment of the right foot. 


CONCLUSIONS OF LAW

1. The criteria for a disability rating greater than 20 percent for service-connected back disability are not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.3, 4.7, 4.40, 4.45, 4.71a, Diagnostic Code (DC) 5243 (2014). 

2. The criteria for a disability rating greater than 10 percent for service-connected fracture of the second and third metatarsals of the right foot are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, DC 5284 (2014). 

3. The criteria for a disability rating greater than 10 percent for service-connected right great toe fracture are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, DC 5010-5280 (2014). 



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1). 

In Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the United States Court of Appeals for Veterans Claims (Court) held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. 

In Pelegrini v. Principi, 18 Vet. App. 112 (2004), the Court held that a VCAA notice, as required by 38 U.S.C.A. § 5103(a), must be provided to a claimant before the initial unfavorable AOJ decision on the claim for VA benefits. 

The Board satisfied its duty to notify under the VCAA in this case. Letters dated April 2008 and July 2009 were sent to the Veteran in which the rating criteria for his disabilities were referenced and he was provided with full notice pertaining to the evidence and information necessary to substantiate his claims for increased ratings, the division of responsibilities between him and VA in obtaining such evidence and information, and the evidence and information needed to assign an effective date. 

While the July 2009 letter was issued after the initial July 2008 rating decision, the United States Court of Appeals for the Federal Circuit has held that VA could cure such a timing problem by readjudicating the Veteran's claim following a compliant VCAA notification letter. Mayfield v. Nicholson, 444 F. 3d 1328, 1333-34 (Fed. Cir. 2006). The Court clarified that the issuance of a statement of the case could constitute a readjudication of the Veteran's claim. See Prickett v. Nicholson, 20 Vet. App. 370 (2006). After the July 2009 letter was issued, the Veteran's claim was readjudicated in a subsequent supplemental statement of the case dated September 2014. Therefore, any defect with respect to the timing of the VCAA notice has been cured. 

VA also satisfied its duty to assist the Veteran in this case. This duty includes assisting the claimant in the procurement of service and other relevant records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. Service treatment records as well as post-service VA treatment records have been obtained and considered. The Veteran has not identified any additional outstanding records that have not have been requested or obtained. The Board finds that all necessary development has been accomplished. See Bernard v. Brown, 4 Vet. App. 384 (1993). 

The Veteran was afforded a VA examination in April 2008 and September 2014 in conjunction with the claims on appeal. The Board finds the VA examinations adequate for adjudication purposes because they were predicated on interviews with the Veteran, a review of the record, and full examinations, addressing relevant rating criteria. The examiners offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Neives-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120,124 (2007). Accordingly, the Board finds that VA's duty to assist with respect to obtaining VA examinations regarding the issues adjudicated in this decision have been met. 

As noted in the Introduction, in April 2012, the Board remanded the case for additional development, to include the issuance of a statement of the case, with respect to the Veteran's toe claim, obtaining Social Security Administration (SSA) and VA treatment records, and obtaining an updated VA examination. The AOJ issued the August 2014 statement of the case and associated VA treatment records with the claims file. A VA examination was conducted in September 2014. With respect to the SSA records, a response was received indicating that they had been destroyed. The Veteran was notified of the destruction of these records in July 2014 and provided an opportunity to submit any in his possession. No response was received. Therefore, the Board finds that the AOJ has complied substantially with the April 2012 remand directives with regard to the claims adjudicated in this decision. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). 

Thus, the Board finds that VA has satisfied fully the duty to assist. In the circumstances of this case, additional efforts to assist or notify the Veteran in accordance with the VCAA would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant are to be avoided). Therefore, he will not be prejudiced as a result of the Board proceeding to the merits of his claims. 

Increased Rating Claims

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. 

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). 

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. In general, it is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. The Board may consider whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as "staging the ratings." See Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2008). When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the Veteran. 38 C.F.R. § 4.3.

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. Functional loss may be due to the absence or deformity of structures or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40. In Mitchell v. Shinseki, 25 Vet. App. 32 (2011), the Court held that, although pain may cause a functional loss, "pain itself does not rise to the level of functional loss as contemplated by VA regulations applicable to the musculoskeletal system." Rather, pain may result in function loss, but only if it limits the ability "to perform the normal working movements of the body with normal excursion, strength, speed, coordination, or endurance. Id. at 38 (quoting 38 C.F.R. § 4.40). 

With respect to joints, in particular, the factors of disability reside in reductions of normal excursion of movements in different planes. Inquiry will be directed to more or less than normal movement, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity or atrophy of disuse. 38 C.F.R. § 4.45. 

The intent of the Rating Schedule is to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. In Burton v. Shinseki, 25 Vet. App. 1 (2011), the Court found that, when 38 C.F.R. § 4.59 is raised by the claimant or reasonably raised by the record, even in non-arthritis contexts, the Board should address its applicability. The Veteran currently is rated at 20 percent for his back, 10 percent for his great toe, and 10 percent for his second and third metatarsals, at the same level or higher than the minimum compensable rating for such disabilities. Thus, 38 C.F.R. § 4.59 does not apply. 

The Board notes that, when evaluating musculoskeletal disabilities, in addition to applying schedular criteria, VA may consider granting a higher rating in cases in which functional loss due to limited or excess movement, pain, weakness, excess fatigability, or incoordination is demonstrated, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45; Deluca v. Brown, 8 Vet. App. 202, 204-7 (1995). The provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45 are to be considered in conjunction with the diagnostic codes predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7 (1996). 

Back Disability

Although the ratings for the Veteran's lumbar spine disability have been assigned under DC 5243 (for intervertebral disc syndrome), the criteria for rating all spine disabilities is set forth in a General Rating Formula for Diseases and Injuries of the Spine, pursuant to which limitation of motion and other factors are evaluated. 

Under the General Rating Formula, a 20 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees, combined range of motion of the thoracolumbar spine not greater than 120 degrees or for muscle spasms or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is warranted for forward flexion of the thoracolumbar spine to 30 degrees or less or for favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine, and a 100 percent rating is warranted for ankylosis of the entire spine. The noted criteria apply with or without symptoms such as pain, stiffness or aching in the area of the spine affected by residuals of injury or disease. 38 C.F.R. § 4.71a. 

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion. Each range of motion measurement is to be rounded to the nearest five degrees. See 38 C.F.R. § 4.71a, DC 5243. 

The record evidence includes the Veteran's VA treatment records as well as reports of VA examinations conducted in April 2008 and September 2014. For the entire period on appeal, the record establishes that the Veteran's thoracolumbar flexion was limited to 60 degrees and the combined thoracolumbar range of motion was limited to 200 degrees, both at worst, without objective evidence of ankylosis. Collectively, the Veteran's symptoms have resulted in lumbar spine impairment no greater than that contemplated in the assigned 20 percent rating. 

The April 2008 VA examiner noted a history of fatigue, decreased motion, stiffness, weakness, spasms and pain in the Veteran's lower back. The Veteran denied any urinary or bowel incontinence, radiculopathy, or erectile dysfunction. The examiner noted intervertebral disc syndrome (IVDS) but with no incapacitating episodes in the past twelve months. On examination, the Veteran had spasms, pain with motion, and tenderness but no atrophy, guarding, or weakness. The examiner found that muscle spasm, localized tenderness or guarding were not severe enough to cause abnormal gait or spinal contour. The examiner found the Veteran to have antalgic gait with poor propulsion. The Veteran had normal muscle tone and no muscle atrophy or spinal ankylosis. Range of motion testing revealed flexion to 90 degrees with pain at 85 degrees; extension to 30 degrees with pain at 25 degrees; right lateral flexion to 30 degrees with pain at 25 degrees; left lateral flexion to 30 degrees with pain at 25 degrees; right rotation to 30 degrees with pain at 25 degrees; and left rotation to 30 degrees with pain at 25 degrees. The examiner noted pain after repetitive use with no additional loss of motion. An x-ray revealed mild to moderate spondylosis. The examiner noted a diagnosis of herniated nucleus pulposus with surgery at L5-S1. 

VA treatment records dated May 2014 noted the Veteran had chronic low back pain, which had been stable. The Veteran was instructed to continue his pain medications. 

The September 2014 VA examiner also noted a diagnosis of L5-S1 herniated nucleus pulposus, post-surgery with progression to moderate spondylosis (degenerative disc disease/degenerative joint disease). The Veteran noted no flare-ups, just daily pain. Range of motion testing revealed flexion to 60; extension to 25 degrees; right lateral flexion to 30 degrees; left lateral flexion to 30 degrees; right rotation to 20 degrees and left rotation to 25 degrees. The Veteran had no objective evidence of painful motion on any of the range of motion testing. The Veteran was able to perform repetitive-use testing with weakened movement but no additional limitation of motion. The examiner noted bilateral thoracolumbar paraspinous tenderness and muscle spasm with no abnormal gait or spinal contour. The examiner noted normal muscle strength with no atrophy. The examiner further noted no radiculopathy or ankylosis. While the examiner noted the Veteran had IVDS, no incapacitating episodes over the past twelve months were noted. 

The Board finds that the preponderance of the evidence is against granting the Veteran's claim for a disability rating greater than 20 percent for herniated nucleus pulposus (HNP) with surgery L5-S1 (back disability). The Veteran's thoracolumbar range of motion testing revealed some loss of motion but did not reflect forward flexion limited to 30 degrees or less or ankylosis of the entire thoracolumbar spine, as is required for the next higher rating under the General Rating Formula. As noted above, range of motion testing conducted in September 2014 revealed flexion to 60 degrees and combined range of motion of 200 degrees. The evidence further notes no ankylosis on examination. 

As indicated, VA may consider any demonstrated functional loss attributable to pain, weakness, excess fatigability, or incoordination, to include with repeated use or during flare-ups, in conjunction with criteria under the General Rating Formula for the spine. See 38 C.F.R. §§ 4.40, 4.45. In this regard, the Board recognizes that during the September 2014 VA examination, the Veteran exhibited weakened movement on repetitive motion testing. No further limitation of motion resulted. There were no objective signs of pain, incoordination, excess fatigability, or flare-ups. Given the results of the VA examination, the overall level of disability demonstrated by the Veteran is not commensurate with a 40 percent disability rating even after taking weakened movement on repetitive motion into consideration. 

The Board further notes that, in addition to the criteria of the General Rating Formula, for rating lumbar spine disabilities, 38 C.F.R. § 4.71a also includes a Formula for Rating Intervertebral Disc Syndrome (IVDS) Based on Incapacitating Episodes. This formula provides for ratings based upon the frequency and duration of incapacitating episodes during a 12-month period. An "incapacitating episode" is a period of acute signs and symptoms due to IVDS that requires bed rest prescribed by a physician. 38 C.F.R. § 4.71a, Note (1). 

Here, the Veteran has a documented diagnosis of IVDS; however, there is no evidence of incapacitating episodes. In fact, both the April 2008 and September 2014 VA examiners noted no such episodes in the past twelve months. 

The Board next observes that Note 1 of the General Rating Form provides a basis for assignment of additional separate ratings for neurological manifestations of lumbar spine disability. That note directs VA to consider whether combining ratings for orthopedic and neurological manifestations of lumbar spine disability would result in a higher rating. The Board finds that there is no evidence of record of radiculopathy, incontinence, or any other orthopedic or neurological manifestation of the lumbar spine disability that would result in a higher rating. 

The Veteran has a surgical scar associated with past lumbar back procedures. In this regard, the September 2014 VA examiner noted a surgical scar related to the Veteran's back disability. This examiner noted that such was not painful or unstable and was a total area of less than six square inches. As the Veteran's surgical scar is superficial and linear and is not considered painful, unstable, or limiting function, a separate compensable rating for the low back scar is not warranted. 38 C.F.R. § 4.118. 

The Board finds that a higher rating is not assignable under any other potentially applicable rating criteria. The Board has also considered whether staged ratings under are appropriate for the Veteran's service-connected back disability; however, the Board finds that his symptomatology has been stable throughout the appeal period. Therefore, assigning additional staged ratings for such disability is not warranted. See Hart, 21 Vet. App. at 505. In summary, the Board finds that there is no basis for assigning a disability rating greater than 20 percent for the Veteran's back disability. 

Toe Disability 

The Veteran currently is assigned a 10 percent rating under DC 5284 (other foot injuries) for the fracture of his second and third metatarsals. Under DC 5284, a 10 percent rating contemplates moderate foot injury; a 20 percent rating contemplates moderately severe foot injury; and a 30 percent rating contemplates severe foot injury. The Note corresponding to the DC indicates that the actual loss of use of the foot is rated at 40 percent. The words "moderate," "moderately severe," and "severe" are not defined by DC 5284. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decision is "equitable and just." 38 C.F.R. § 4.6. 

"Loss of use of a foot" is defined as no effective function remaining other than that which would be equally well served by an amputation stump at the site of election below the knee with use of a suitable prosthetic appliance. The determination will be made on the basis of the actual remaining function of balance, propulsion, etc., which could be accomplished equally well by an amputation stump with prosthesis. 38 C.F.R. § 4.63. Examples under 38 C.F.R. § 4.63 that constitute loss of use of a foot include extremely unfavorable ankylosis of the knee, complete ankylosis of two major joints of an extremity, shortening of the lower extremity of 3 1/2 inches or more, or complete paralysis of the external popliteal nerve and consequent foot drop. 

The Veteran also has been assigned a separate 10 percent rating for his right great toe fracture under DC 5010-5280 (arthritis-hallux valgus). Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.27. Under DC 5280, a 10 percent rating is assigned for an operation to resection the metatarsal head or for severe symptoms equivalent to amputation of the great toe. See 38 C.F.R. § 4.71a, DC 5280.

The relevant evidence of record consists of the two VA examinations. The April 2008 VA examination report noted pain and stiffness in toes while standing or walking. The Veteran reported flare-ups occurring weekly or more often brought about by increased activity. He reported that he could not do anything until the pain subsided. A foot examination revealed pain, tenderness and hallux valgus with no swelling, instability, weakness or abnormal weight bearing. An x-ray revealed hallux valgus with degenerative joint disease of the IP joints. The examiner diagnosed fracture of the right great toe with hallux valgus and fracture of the second and third right metatarsals. 

The September 2014 VA examiner noted right foot great toe and metatarsal fractures. The examiner noted that the exact percentage each contribute to the Veteran's overall foot symptoms and disability cannot be separated and determined without resorting to speculation, especially given the symptoms are related to degenerative joint disease. The Veteran reported ongoing pain in his foot with walking daily. He denied any flare-ups. The examiner noted mild midfoot pain on manipulation over metatarsals. Mild to moderate symptoms of hallux valgus of the right foot was noted with no surgery. The examiner noted functional loss of the right foot in the form of pain on weight-bearing and interference with standing. No pain weakness, fatigability, or incoordination limiting functional ability during flare-ups was noted. The examiner noted mild antalgic gait. 

The Board finds that the preponderance of the evidence is against granting disability ratings greater than 10 percent for fractures of the second and third metatarsals of the right foot or for fracture of the right great toe with hallux valgus. The VA examiners indicated mild to moderate hallux vagus. Additionally, pain in the Veteran's right toes was noted only with standing and walking. The VA examiners did not indicate that such constituted moderately severe or severe symptoms. Additionally, the evidence of record includes no other subjective complaints with respect to the Veteran's feet. In this regard, while the Board finds that the Veteran's right toe symptoms reach the level of moderate impairment, the evidence fails to reveal more severe manifestations that more nearly approximate a moderately severe or severe foot injury in the right foot. 

Neither the lay or medical evidence reflects that the Veteran's right toe disabilities result in functional loss that more nearly approximates a moderately severe or severe foot injury even in consideration of the totality of his symptoms. Specifically, the September 2014 VA examiner noted only mild or moderate impact on the Veteran's daily activities. Additionally, based on x-ray results, the examiner found mild degenerative joint disease in the Veteran's toe joints in general. While the Veteran reported pain with prolonged walking or standing, there is no evidence indicating that the functional impairment is impacted to the level of moderately severe or severe. Thus, the Board finds that the preponderance of the evidence supports no higher than a 10 percent rating for fracture of the right great toe and second and third metatarsals, even taking into account the Veteran's additional functional limitation due to pain. See also 38 C.F.R. §§ 4.40, 4.45. 

Additionally, under DC 5280 for hallux valgus, there is no indication that the Veteran has severe symptoms. There also is no indication that his symptoms rise to the level of equaling amputation of the great toe. As noted in the September 2014 VA examination report, the Veteran has not had an operation for great toe amputation. Thus, the Veteran currently is rated at 10 percent in accordance with the provisions of 38 C.F.R. § 4.45 and does not meet the rating criteria under DC 5280 for an increased rating. 

The Board has also considered other potentially applicable DCs. See Esteban v. Brown, 6 Vet. App. 259 (1994) (holding that separate ratings may be assigned if the symptomatology is not duplicative or overlapping). The other DCs pertinent to the evaluation of foot disabilities that provide for a higher or separate rating are not applicable because there is no indication that such foot disabilities have been diagnosed or are related to the Veteran's service-connected disabilities. The evidence of record does not show a diagnosis of flatfoot, weak foot, claw foot, metatarsalgia, hallux rigidus, hammer toe, or malunion or nonunion of the tarsal or metatarsal bones. See 38 C.F.R. § 4.71a, DCs 5276-5279, 5281-5283. Therefore, absent a diagnosis of such disorders related to the Veteran's service-connected right toe disabilities, these DCs are inapplicable. See Butts v. Brown, 5 Vet. App. 532, 538 (1993) (choice of diagnostic code should be upheld if it is supported by explanation and evidence). 

The Veteran has a surgical scar associated with his right great toe fracture surgical procedure. The examiner noted a surgical scar of the right great toe that measured 2 centimeters by 0.5 centimeters with very slight hypopigmentation. The examiner noted this scar was not painful or unstable. As the Veteran's surgical scar is superficial and linear and is not considered painful, unstable, or limiting function, a separate compensable rating for the low back scar is not warranted. 38 C.F.R. § 4.118. 

The Board has considered whether staged ratings are appropriate for the Veteran's service-connected right great toe and second and third metatarsal fractures; however, the Board finds that his symptomatology has been stable throughout the appeal period. Therefore, assigning additional staged ratings for such disabilities is not warranted. See Hart, 21 Vet. App. at 505.

In summary, the Board finds that the Veteran's service-connected right great toe fracture and fractures of the second and third metatarsals of the right foot do not warrant disability ratings greater than the 10 percent ratings currently assigned for each disability. 

Other Considerations

In assessing the severity of the disabilities under consideration, the Board has considered the Veteran's assertions regarding his symptoms, which he is certainly competent to provide. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) and Grottveit v. Brown, 5 Vet. App. 91, 93 (1993). The criteria needed to support higher ratings require medical findings that are within the province of trained medical professionals. See Jones v. Brown, 7 Vet. App. 134 (1994). As such, the lay assertions are not considered more persuasive than the objective medical findings which, as indicated above, do not support assignment of any higher rating pursuant to any applicable criteria at any point pertinent to this appeal. 

Additionally, the Board has contemplated whether the case should be referred for extra-schedular consideration. An extra-schedular disability rating is warranted if the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that application of the regular schedular standards would be impracticable. 38 C.F.R. § 3.321(b)(1). 

In Thun v. Peake, 22 Vet. App. 111, 115-16 (2008), the Court explained how the provisions of 38 C.F.R. § 3.321 are applied. Specifically, the Court stated that the determination of whether a claimant is entitled to an extra-schedular rating under 
§ 3.321 is a three-step inquiry. First, it must be determined whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. In this regard, the Court indicated that there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required.

Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as "marked interference with employment" and "frequent periods of hospitalization." Third, when an analysis of the first two steps reveals that the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extra-schedular rating. Id.

The Board finds that referral for consideration of the assignment of extraschedular ratings is not warranted. In this case, the Board finds that the applicable schedular criteria are adequate to rate the disability under consideration at all points pertinent to this appeal. The rating schedule as well as 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45 fully contemplate the Veteran's described symptomatology to include pain, limitation of motion and difficulty walking or standing and provide for ratings higher than those assigned based on more significant functional impairment. Significantly, there is no medical indication or argument that the applicable criteria are otherwise inadequate to rate the disabilities. As the threshold requirement for invoking the procedures of 38 C.F.R. § 3.321 are not met, referral for extra-schedular consideration is not required. See Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995). 

The Board notes that, under Johnson v. McDonald, 762 F.3d 1362 (2014), a Veteran may be awarded an extra-schedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the symptoms associated with service-connected disabilities experienced. In this case, even after affording the Veteran the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there is no additional impairment that has not been attributed to a specific, rated disability. Accordingly, this is not an exceptional circumstance in which extra-schedular consideration may be required to compensate the Veteran for disability that can be attributed only to the combined effect of multiple conditions.

Finally, in Rice v. Shinseki, 22 Vet. App. 447 (2009), the Court held that a claim for a total disability rating due to individual unemployability (TDIU) is part of a rating claim when such claim is expressly raised by the Veteran or reasonably raised by the record. In this case, the Veteran has not alleged and the record evidence does not indicate that he is unemployed or unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities. The April 2008 VA examiner noted the Veteran was retired due to age and duration of work. It was noted that the Veteran's back disability would have some effect on his daily activities. The September 2014 VA examiner noted work restrictions, to include avoidance of prolonged standing or sitting, lifting, carrying, bending and twisting during episodes of pain. With respect to the Veteran's toe disabilities, the September 2014 VA examiner noted work restrictions with respect to walking or prolonged standing and that the Veteran may need frequent rest breaks to elevate his foot due to pain. With respect to both the Veteran's back and right foot disabilities, the examiner opined that such rendered him from being gainfully employed for heavy duty occupations but that he could be gainfully employed for light duty or desk-job occupations with some accommodation. Therefore, the Board finds that the issue of entitlement to TDIU is not expressly raised by the Veteran or reasonably raised by the record, and, consequently, further consideration of such is not necessary. 

As the preponderance of the evidence is against the Veteran's claims, the benefit-of-the-doubt doctrine does not apply. 38 U.S.C.A. § 5107(b) (West 2014); Ortiz v. Principi, 274 F.3d 1361, 1364, 1365 (Fed. Cir. 2001) (holding that "the benefit of the doubt rule is inapplicable when the preponderance of the evidence is found to be against the claimant"); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 


ORDER

Entitlement to a disability rating greater than 20 percent for herniated nucleus pulpous with surgery L5-S1 (back disability) is denied. 

Entitlement to a disability rating greater than 10 percent for fractures of the second and third metatarsals of the right foot is denied. 

Entitlement to a disability rating greater than 10 percent for fracture of the right great toe with hallux valgus is denied. 



____________________________________________
MICHAEL T. OSBORNE
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs